# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. TDC-18-0012 |
| | ) | |
| MARK T. LAMBERT, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT MARK LAMBERT'S
## MOTION REQUESTING AN ORDER COMPELLING THE GOVERNMENT
## TO PRODUCE CERTAIN RULE 16 AND *BRADY* EVIDENCE

Defendant Mark Lambert, by and through undersigned counsel, respectfully moves this

Court pursuant to Fed. R. Crim. P. 16 as well as *Brady v Maryland*, 373 U.S. 83 (1963), and its

progeny, to schedule an oral hearing on this motion and issue an Order compelling the

government to produce certain Rule 16 and *Brady* evidence, as set forth in further detail in the

accompanying memorandum of law.

Respectfully Submitted,

Date: April 15, 2019

/s/ William M. Sullivan, Jr.
William M. Sullivan, Jr., Esq. (No. 17082)
Thomas C. Hill, Esq. (No. 05703)
Fabio Leonardi, Esq. (No. 07206)
1200 Seventeenth Street, NW
Washington, D.C. 20036
Telephone: (202) 663-8027
Facsimile: (202) 663-8007
wsullivan@pillsburylaw.com
thomas.hill@pillsburylaw.com
fabio.leonardi@pillsburylaw.com

*Counsel for Defendant Mark Lambert*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. TDC-18-0012 |
| | ) | |
| MARK T. LAMBERT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT MARK LAMBERT'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION REQUESTING AN ORDER COMPELLING THE**
**GOVERNMENT TO PRODUCE CERTAIN RULE 16 AND *BRADY* EVIDENCE**

Defendant Mark Lambert, by and through undersigned counsel, respectfully moves this

Court pursuant to Fed. R. Crim. P. 16 as well as *Brady v Maryland*, 373 U.S. 83 (1963), and its

progeny, to schedule an oral hearing on this motion and issue an Order compelling the

government to produce certain Rule 16 and *Brady* evidence, as further set forth herein.

Principally, Mr. Lambert seeks documents, including video and audio recordings, related to (1)

alleged co-conspirator Rodney Fisk, the initial co-conspirator with Vadim Mikerin, who

subsequently is alleged to have recruited Mr. Lambert into the conspiracy and who has just been

identified by the prosecution as a secret FBI operative, and (2) alleged co-conspirator Mr.

Mikerin, the purported recipient of illicit payments.  Additionally, Mr. Lambert seeks the

underlying FBI 302s, interview memoranda, interview notes or other original source materials

reflecting statements of any witnesses disclosed to Mr. Lambert, including those identified as

having "Potentially *Brady*, *Giglio* or Impeachment" evidence, as well as the interview notes

reflecting Mr. Lambert's own statements made to law enforcement.

The government has refused to provide all of these specifically requested materials.

## BACKGROUND

This case initially stems from a joint Department of Energy Office of Inspector General and FBI counterintelligence investigation dating back, at least, to 2009.  *See* Criminal Complaint ¶ 13, *United States v. Vadim Mikerin*, 8:14-cr-00529-TDC (ECF No. 8) (attached as Exhibit 1); Transcript of Motion Proceedings Before the Honorable Theodore D. Chuang United States District Judge at 5, ¶¶ 16-21, *United States v. Vadim Mikerin*, 8:14-cr-00529-TDC (ECF No. 58) (attached as Exhibit 2) ("Mikerin Motion Transcript"); Complaint of William Douglas Campbell, *William Douglas Campbell et. al. v. Vadim Mikerin et. al.*, 1:16-cv-01888-MJG (ECF No. 1) (attached as Exhibit 3).  Over the past decade, this investigation has seen the government covertly recruit confidential informants in what appears to be an attempt to entangle a Russian businessman living in the United States, Mr. Mikerin, into an illicit payment scheme, and then to leverage his precarious legal position to compel him to provide intelligence about certain high-ranking Russian government officials.  *See*, *e.g.*, Motion to Recall Arrest Warrant Against Vadim Mikerin, *United States v. Vadim Mikerin*, 8:14-cr-00529-TDC (ECF No. 4) (attached as Exhibit 4).

With regard to Mr. Lambert's case, the government generally alleges that Mr. Mikerin solicited and accepted illicit payments from Transport Logistics International, Inc. ("TLI") in exchange for assistance in obtaining contracts for the transportation of enriched uranium.  *See* Superseding Indictment, *United States v. Mark T. Lambert*, 8:18-cr-00012-TDC (ECF No. 58) (attached as Exhibit 5).  Remarkably, Mr. Lambert has now been told for the first time, based on a brand new government disclosure to Mr. Lambert's counsel at the very end of March 2019, that Mr. Fisk, the president of TLI who, along with Mr. Mikerin, allegedly initiated the unlawful payment scheme, at that very time was a secret government operative working for, and being

paid by, the FBI.  *See* March 29, 2019 Letter from the U.S. Department of Justice (attached as

Exhibit 6).  And all of this was apparently unfolding while a second secret government operative

and paid FBI source, William Campbell, was directly involved in making purportedly illegal

payments to Mr. Mikerin at the direction of the FBI, and was reporting back to the FBI about the

payment scheme.  *See*, *e.g.*, Superseding Indictment; Campbell Civil Complaint.

## I.     Alleged Conspiracy

Mr. Mikerin is a Russian national formerly employed with JSC Techsnabexport

("Tenex"), a Russian company.  *See* Superseding Indictment at 3, ¶ 7.  In or about 2010 or 2011,

Mr. Mikerin moved to the United States to serve as the president of Tenam Corporation, a

Maryland company.  According to the government, Mr. Mikerin initially conspired with Mr.

Fisk, the owner and president of TLI, to promote an illicit payment scheme.  Years later, upon

Mr. Fisk's subsequent departure from TLI in 2009, the illegal payment scheme with Mr. Mikerin

is alleged to have continued with Daren Condrey, TLI's co-president, defendant Mr. Lambert,

TLI's other co-president, and third-party consultant Boris Rubizhevsky.  *See id.* at 4, ¶ 12; Plea

Agreement of Vadim Mikerin, Attachment A at 10-13, *United States v. Vadim Mikerin*, 8:14-cr-

00529-TDC (ECF Nos. 103 and 103-1) (attached as Exhibit 7); Plea Agreement of Daren

Condrey, Attachment A at 9-11, *United States v. Daren Condrey*, 8:15-cr-00336-TDC (ECF

Nos. 22 and 22-1) (attached as Exhibit 8); Plea Agreement of Boris Rubizhevsky, Attachment A

at 9-10, *United States v. Boris Rubizhevsky*, 8:15-cr-00332-TDC (ECF Nos. 26 and 26-1)

(attached as Exhibit 9).  In particular, the government alleges that it was Mr. Fisk who eventually

recruited Mr. Condrey and Mr. Lambert into the payment scheme, which allegedly continued

after Mr. Fisk's death in 2011.  *See* Superseding Indictment at 5, ¶ 16.

Moreover, according to the government, an additional participant in Mr. Mikerin's alleged conspiracy was Mr. Campbell, an FBI confidential informant who, while making allegedly illegal payments to Mr. Mikerin, was secretly working for the FBI and reporting back about Mr. Mikerin's illicit payment schemes. *See id.*; Mikerin Criminal Complaint at 4, ¶ 13. And yet, two weeks ago, the government informed Mr. Lambert that Mr. Fisk too was a secret FBI operative during the very time Mr. Fisk is now alleged to have been conspiring with Mr. Lambert, among others. *See* March 29, 2019 DOJ Letter at 3. Of course, like Mr. Campbell, Mr. Fisk was presumably reporting back to his FBI handlers while allegedly making illegal payments to Mr. Mikerin.

It also appears that Mr. Fisk's status as an FBI informant has been known to the prosecution since at least April 2015 (if not years earlier), but the prosecution chose not to disclose Mr. Fisk's FBI role to the defense until two weeks ago, after Mr. Lambert's unopposed request for a continuance of the original trial date, and has declined to identify the FBI agents with knowledge of, or documents or recordings reflecting, any of Mr. Fisk's activities on behalf of the FBI. *See id.*; Mikerin Motion Transcript at 32, ¶¶ 9-14; April 1, 2019 Email from the U.S. Department of Justice (attached as Exhibit 10).

## II.    Charges

In the summer of 2014, the government filed an 11-page affidavit of Energy Department OIG Special Agent David Gadren in support of an application for a criminal complaint charging Mr. Mikerin with one count of Interference with Commerce by Threats or Violence under 18 U.S.C. section 1951, *i.e.*, extortion. *See* Mikerin Criminal Complaint. About a year later, Mr. Mikerin pled guilty before this Court to one count of Conspiracy to Commit Money Laundering under 18 U.S.C. § 371. *See* Mikerin Plea Agreement.

In the fall of 2014, the government also filed a 21-page affidavit of Energy Department Special Agent Gadren in support of a request for a criminal complaint charging Mr. Lambert, Mr. Condrey, Carol Condrey (Mr. Condrey's wife) and Mr. Rubizhevsky with one count of Conspiracy to Commit Wire Fraud under 18 U.S.C. § 1349, and seeking their arrest. *See* Affidavit in Support of Criminal Complaint, *United States v. Daren Condrey*, *Carol Condrey*, *Mark Lambert and Boris Rubizhevsky*, 8:15-cr-00032-TDC (ECF No. 4) (attached as Exhibit 11); Criminal Complaint, *United States v. Carol Condrey*, 8:14-mj-02424-CBD (ECF No. 1) (attached as Exhibit 12); Criminal Complaint, *United States v. Daren Condrey*, 8:15-cr-00336-TDC (ECF No. 1) (attached as Exhibit 13); Criminal Complaint, *United States v. Boris Rubizhevsky*, 8:15-cr-00332-TDC (ECF No. 1) (attached as Exhibit 13).  In a rarely seen turn of events, however, Magistrate Judge Charles Day exercised his informed independent judgment and refused to grant the government's request for a criminal complaint and arrest warrant against Mr. Lambert, as he found that no probable cause was established to believe that Mr. Lambert had engaged in the charged crime.  Armed with the remaining arrest warrants, FBI agents arrested Mr. and Mrs. Condrey.  As part of the FBI raid, government agents also searched TLI's offices in Fulton, Maryland, where they obtained assistance from, and interrogated, Mr. Lambert.  Intent on cooperating with the FBI, Mr. Lambert responded to the agent's questioning by providing statements which were later summarized in an FBI 302.  Mr. Lambert also consented to the government's search of TLI email accounts, and directed the agents to Mr. Condrey's files.  *See* February 2, 2018 Letter from the U.S. Department of Justice, at 6 (attached as Exhibit 14).

In June 2015, following months of negotiations between the government and counsel for both Mr. Condrey and Mrs. Condrey –and after the government had dropped all charges against his wife– Mr. Condrey pled guilty to one count of Conspiracy to Violate the Foreign Corrupt

Practices Act ("FCPA") and to Commit Wire Fraud under 18 U.S.C. § 371.  *See* Daren Condrey

Plea Agreement; Order Granting Continuance of Daren Condrey's Preliminary Hearing, *United*

*States v. Daren Condrey*, 8:15-cr-00336 (ECF No. 10) (attached as Exhibit 15); Second Consent

Motion for Continuance of Daren Condrey's Preliminary Hearing, *United States v. Daren*

*Condrey*, 8:15-cr-00336 (ECF No. 11) (attached as Exhibit 16); Third Consent Motion for

Continuance of Daren Condrey's Preliminary Hearing, *United States v. Daren Condrey*, 8:15-cr-

00336 (ECF No. 13) (attached as Exhibit 17); Fourth Consent Motion for Continuance of Daren

Condrey's Preliminary Hearing, *United States v. Daren Condrey*, 8:15-cr-00336 (ECF No. 16)

(attached as Exhibit 18); Second Consent Motion for Continuance of Carol Condrey's

Preliminary Hearing, *United States v. Carol Condrey*, 8:14-mj-02424-CBD (ECF No. 10)

(attached as Exhibit 19).  The charges against Mrs. Condrey were dismissed.  *See* Order for

Dismissal, *United States v. Carol Condrey*, 8:14-mj-02424-CBD (ECF No. 12) (attached as

Exhibit 20).  However, according to both Mr. Condrey's plea agreement, and the lack of any

government disclosure to Mr. Lambert providing otherwise, no representations, express or

implied, were ever made to Mr. Condrey concerning the status of his wife's case.  *See* Condrey

Plea Agreement.  The government has represented to Mr. Lambert that Mr. Condrey will be

testifying at trial as a cooperating witness.

Over three years later, and at least nine years after the investigation began, the

government sought a grand jury indictment charging Mr. Lambert.  On January 10, 2018, Mr.

Lambert was indicted in an eleven-count indictment charging him under 18 U.S.C. § 371 with

Conspiracy to Violate the Foreign Corrupt Practices Act (the "FCPA") and to Commit Wire

Fraud (Count One), under 15 U.S.C. § 78dd-2 with Violation[s] of the FCPA (Counts Two

through Eight), under 18 U.S.C. § 1343 with Wire Fraud (Counts Nine and Ten), and under 18

U.S.C. § 1956(a)(2)(A), with Money Laundering (Count Eleven).  *See* Indictment, *United States v. Mark T. Lambert*, 8:18-cr-00012-TDC (ECF No. 1) (attached as Exhibit 21).  A superseding indictment was also filed with the Court just about two weeks ago – over a year after the government indicted Mr. Lambert, shortly after Mr. Lambert's unopposed request for a trial continuance, and less than three months from the current trial date.

## III.    Withheld Discovery

### A.    Mr. Fisk's Secret Role as a Government Operative

As the Court knows, Mr. Fisk died in 2011.  However, the government "unambiguously" represented to the Court that Mr. Fisk too "would have been charged" along with Mr. Lambert "were he still alive . . . ."  Mikerin Motion Transcript at 10, ¶¶ 14-16.

In addition, by April 2015, at the latest, the prosecution learned that Mr. Fisk had been a secret government and FBI operative at the time he purportedly recruited Mr. Lambert into the payment scheme and allegedly made the illicit payments that are at issue in this case.  In fact, when asked by Mr. Mikerin's counsel whether Mr. Fisk was a confidential FBI source, Energy Department Special Agent Gadren testified that while "I don't know for certain. *I believe he might have been . . . .*"  *Id*. at 32, ¶¶ 9-13 (emphasis added).  Although the prosecution had been on notice for, at least, almost four years that Mr. Fisk likely had been a secret government operative, it failed to disclose this information to Mr. Lambert until March 26, 2019 – over 14 months after Mr. Lambert was indicted and barely one month before trial was then scheduled to begin.[1]  The prosecution also limited its subsequent written March 29, 2019 disclosure to a brief single sentence generally merely repeating that Mr. Fisk had served as a government asset

---

[1] At the time of the disclosure to the defense on March 26, 2019, trial was scheduled to commence on April 30, 2019.

between 2006 and 2011.  *See* March 29, 2019 DOJ Letter.  That statement, of course, has no evidentiary value.

Mr. Lambert's counsel immediately asked for both the identity of the FBI agents responsible for the FBI's relationship with Mr. Fisk, and all documents and recordings relating to such relationship.  The government responded that it would not disclose any of the requested materials.  *See* April 1, 2019 DOJ Email.  Despite Mr. Lambert 's requests for all Rule 16 and *Brady* materials regarding Mr. Fisk's role as a confidential government asset, to this date, the government has declined to produce either the identities of the relevant FBI agents or any documents or recordings.

   B.    **Audio and Video Recordings of Vadim Mikerin**

While the government did provide Mr. Lambert with a video recording of Mr. Mikerin's complete FBI interview, as well as audio recordings of his jail calls and his phone's pen trap and trace records, along with many of Mr. Mikerin's emails and financial information relating to his allegedly illegal payment scheme, it has failed to produce any audio or video recordings of these illicit payments, including payments exchanged in a hotel room and during other meetings confirmed by the government.  *See* Transcript of Vadim Mikerin's Detention Hearing Before the Honorable Judge William Connelly at 17, ¶¶ 5-24, *United States v. Vadim Mikerin*, 8:14-cr-00529-TDC (ECF No. 13) (attached as Exhibit 22); *see* Campbell Civil Complaint at 49. Additionally, the government has failed to produce any recordings of telephone or in-person communications between Mr. Mikerin and Mr. Fisk's widow, Deborah Payne, in furtherance of the alleged specifically charged conspiracy regarding these allegedly illegal payments.  Mr. Lambert's counsel has requested these specified materials in multiple communications to the government demanding production of all Rule 16 and *Brady* material, including in three letters

specifically requesting audio or video recordings relating to improper or illicit payments or requests for payments by and to Mr. Mikerin, Tenex, Tenam and/or any individuals associated with them.  February 19, 2019 Letter of Pillsbury to the U.S. Department of Justice (attached as Exhibit 23); March 6, 2019 Letter of Pillsbury to the U.S. Department of Justice (attached as Exhibit 24); April 2, 2019 Letter of Pillsbury to the U.S. Department of Justice (attached as Exhibit 25).

> **C.     Source Documents and Materials Regarding Witness Statements That the Prosecution Disclosed to Mr. Lambert, Including Those Identified as "Potentially *Brady*, *Giglio* or Impeachment Material"**

In the year that followed Mr. Lambert's indictment, the government produced certain discovery to Mr. Lambert, including short summaries of almost two dozen witness interviews. *See* February 2, 2018 DOJ Letter; January 7, 2019 Letter of the U.S. Department of Justice (attached as Exhibit 26); March 13, 2019 Letter of the U.S. Department of Justice (attached as Exhibit 27).  In particular, these disclosures include succinct government-created summaries of statements of numerous alleged co-conspirators or associated individuals, including Mr. Condrey, an alleged co-conspirator and the government's main cooperating witness, Mrs. Condrey, whom the government previously charged and believed was a co-conspirator, Mr. Mikerin, the Russian co-conspirator purported to be at the center of the alleged scheme, Mr. Campbell, the secret government operative, Deborah Payne, the wife of alleged co-conspirator and secret government asset Mr. Fisk, Mr. Rubizhevsky, an alleged co-conspirator, and other TLI employees with knowledge about the allegedly improper payments. [2]  While the government itself disclosed that at least 17 of these witnesses made statements consisting of "Potential *Brady*,

---

[2] The summaries further include statements by current and former TLI employees, current and former TENAM employees, government agents and other third parties involved in the facts at issue.

*Giglio* or Impeachment Material," it failed to provide Mr. Lambert with the actual FBI 302s, notes, memoranda or other original source materials which the government had relied upon to produce its succinct summaries.  February 2, 2018 DOJ Letter.  Additionally, while the government did provide, pursuant to Rule 16, a copy of the FBI 302 containing Mr. Lambert's statements to the government, it failed to produce the actual government notes of the FBI's interview of Mr. Lambert, which had occurred the day before the government agent the FBI 302 summary.

Mr. Lambert's counsel had specifically requested these and "all . . . [FBI] 302 and interview memoranda" on two occasions back in 2016, before Mr. Lambert was even indicted, and after Mr. Lambert's counsel had made a comprehensive declination presentation to the Government.  *See* July 20, 2016 Letter of Pillsbury to the U.S. Department of Justice (attached as Exhibit 28); July 25, 2016 Letter of Pillsbury to the U.S. Department of Justice (attached as Exhibit 29).  Mr. Lambert's counsel had further reiterated his specific request for these source materials shortly after Mr. Lambert was indicted and before the government made its initial discovery production.  *See* January 17, 2018 Email of Pillsbury to the U.S. Department of Justice (attached as Exhibit 30).  Mr. Lambert's counsel continued to request production of all Rule 16 and *Brady* materials again on July 18, 2018, September 9, 2018, October 3, 2018, March 6, 2019, and most recently on April 2, 2019.  *See* July 18, 2018 Letter of Pillsbury to the U.S. Department of Justice (attached as Exhibit 31); September 6, 2018 Letter of Pillsbury to the U.S. Department of Justice (attached as Exhibit 32); October 3, 2018 Letter of Pillsbury to the U.S. Department of Justice (attached as Exhibit 33); March 6, 2019 Letter of Pillsbury to the U.S. Department of Justice (attached as Exhibit 34); April 2, 2019 Pillsbury Letter.  To this date, however, with the sole exception of the FBI 302 of Mr. Lambert's interview, the government has not provided any

FBI 302s, interview notes or interview memoranda regarding these witness statements, including those identified as "Potentially *Brady*, *Giglio* or Impeachment Material."

## ARGUMENT

Mr. Condrey, Mrs. Condrey, Mr. Mikerin and secret government assets Mr. Fisk and Mr. Campbell are at the core of the government's alleged payment scheme relating to Mr. Lambert. Mr. Condrey, Mrs. Condrey, Mr. Mikerin and Mr. Fisk have all at one time been charged as Mr. Lambert's co-conspirators.  Mr. Fisk, who Mr. Lambert just learned from the government was one of the government's own secret operatives, was also the same individual who allegedly recruited Mr. Lambert and Mr. Condrey into the illicit scheme at the same time he was working for the FBI.  And both secret government operatives, Mr. Fisk and Mr. Campbell, are alleged to have been involved in making payments to Mr. Mikerin.  Nonetheless, the government has declined to produce any Rule 16 and *Brady* materials about Mr. Fisk's role as a secret government asset during the time he is alleged to have been part of the charged conspiracy, and has declined even to identify the agents with knowledge of the relationship between the FBI and Mr. Fisk.  Further, the government has refused to produce Rule 16 and *Brady* materials in the form of recordings relating to allegedly illicit payments made or received by these and other individuals.  Finally, the government has refused to provide Rule 16 as well as *Brady* source materials regarding the witnesses it disclosed to Mr. Lambert's counsel, including those it identified as "Potentially *Brady*, *Giglio* or Impeachment" witnesses, as well as the interview notes of Mr. Lambert's statements to the government.  The government's failure to produce these records, despite Mr. Lambert's multiple requests, violates the government's disclosure obligations under Rule 16 and *Brady*.  Accordingly, the Court should compel the government to promptly produce these materials to Mr. Lambert.

I.      **Rule 16 and *Brady* Compel the Production of Evidence**

Rules 16(a)(1)(A) and (B) require the government to disclose to the defendant the

substance of any relevant oral statements made by the defendant in response to interrogation by a

government agent, as well as the portion of any written record containing the substance of any

such statements.  Additionally, Rule 16(a)(1)(E) requires the government to permit a defendant

to inspect documents "if the item is within the government's possession, custody or control and .

. . the item is material to preparing the defense."  For a defendant to show that an item is

"material" under Rule 16, "[t]here must be some indication that the pretrial disclosure of the

disputed evidence would have enabled the defendant significantly to alter the quantum of proof

in his favor."  *United States v. Ross*, 511 F.2d 757, 763 (5th Cir. 1975), *cert. denied*, 423 U.S.

836.  "[E]vidence is material as long as there is a strong indication that it will play an important

role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or

assisting impeachment or rebuttal."  *United States v. Caro*, 597 F.3d 608, 621 (4th Cir. 2010)

(quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)).  When a party fails to meet

their Rule 16 discovery obligations "the court may: (A) order that party to permit discovery or

inspection."  Fed. R. Crim. P. 16(d)(2)(A).

Similarly, *Brady* and its progeny require the government to disclose favorable evidence

to the accused where such evidence is material either to guilt or to punishment.  *Brady v.*

*Maryland*, 373 U.S. 83, 87 (1963).  A *Brady* violation entails three showings: (1) the information

not disclosed must be "favorable to the accused, either because it is exculpatory . . . or . . .

impeaching," (2) the information must have been suppressed or withheld by the prosecution, and

(3) the information must be "material" to guilt or punishment.  *Strickler v. Greene*, 527 U.S. 263,

281-282 (1999).  Favorable evidence includes not only evidence that tends to exculpate the

accused, but also evidence that is useful to impeach the credibility of a government witness.  *See Giglio v. United States*, 405 U.S. 150, 154 (1972); *Smith v. Cain*, 132 S. Ct. 627, 630 (2012).  Evidence is material where "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *United States v. Bagley*, 473 U.S. 667, 682 (1985); *see Cone v. Bell*, 556 U.S. 449, 469-470 (2009).  A "'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985).  The failure to disclose material favorable evidence violates due process "irrespective of the good faith or bad faith of the prosecution," *Brady*, 373 U.S. at 87, and without regard to whether the evidence was actually known to the individual prosecutor, or merely to "others acting on the government's behalf in the case . . . ." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

II.     **The Government's Failure to Produce Discovery Materials Regarding Mr. Fisk's Role as a Secret Government Operative Violates Rule 16 and *Brady***

Information and records regarding Mr. Fisk's recently revealed role as a covert government asset are relevant to Mr. Lambert's defense and need to be immediately disclosed to Mr. Lambert pursuant to Rule 16 and *Brady*.

There is no doubt that information and records regarding Mr. Fisk's role as a secret government operative are material to Mr. Lambert's defense.  First, Mr. Fisk is alleged to be Mr. Lambert's co-conspirator in the charged illegal payment scheme.  Second, Mr. Lambert has now been told that Mr. Fisk was working as a secret government asset during the exact same time he allegedly made the very same illicit payments to Mr. Mikerin that are at issue in this case.  Third, Mr. Fisk was still serving as a covert FBI operative when he expanded the scheme to Mr. Lambert and allegedly recruited him into the illicit payment scheme.  And fourth, Mr. Fisk was supposedly engaged in these activities at the exact same time that Mr. Campbell, the FBI's other

secret operative, was also allegedly making illicit payments to Mr. Mikerin and reporting about this same payment scheme back to the FBI.  Accordingly, materials regarding Mr. Fisk's role as a secret government operative will be corroborative of Mr. Lambert's defenses, and will be used by Mr. Lambert in uncovering information to identify potential witnesses, support defense witnesses' testimony and assist Mr. Lambert in impeaching government witnesses at trial.  *See Caro*, 597 F.3d at 621.

By its own belated disclosure, the prosecution understood the significance of the fact that Mr. Lambert's alleged main co-conspirator was secretly working for the government at the same time he is alleged to have engaged in the very criminal acts that are at issue in this case, including recruiting Mr. Lambert to join the conspiracy.  Why else would it have finally disclosed the information to Mr. Lambert?  For over a year, the government concealed that information –which should have been disclosed as soon as Mr. Lambert was indicted– ultimately choosing to provide a summary disclosure one month before the scheduled trial date.  That disclosure, however, is virtually useless to Mr. Lambert for purposes of trial because the government has refused to produce anything of evidentiary value, including the identity of the FBI agents responsible for the relationship between the FBI and Mr. Fisk, or any of the documents or recordings relating to Mr. Fisk's work as an FBI source.

Of course, if Mr. Fisk were still alive, he would know the identity of the FBI or other government agents with whom he communicated or had a relationship while serving as a secret government asset, as well the content of any such communications and the nature of any relevant materials.  But Mr. Fisk is dead.  Thus, because Mr. Fisk is unavailable, discovery of information and materials regarding Mr. Fisk's role as a covert government operative and the true focus of the FBI investigation is clearly necessary for Mr. Lambert to pursue and investigate the

information recently disclosed by the government.  For instance, Mr. Lambert would use these records and information to learn the nature and extent of any communications between Mr. Fisk and FBI or other government agents, as well as of any documents reflecting, among other things, any directions or instructions that Mr. Fisk may have received from the FBI or other government agencies.  At the very bare minimum, Mr. Lambert is entitled to learn the identity of the FBI or other government agents with whom Mr. Fisk communicated and had a relationship while serving as a covert government asset.  Without the identity of the FBI agents and the documents reflecting the FBI's relationship with Mr. Fisk, Mr. Lambert has no ability to pursue this line of defense, and the jury cannot properly assess Mr. Fisk's role and credibility or the credibility of the FBI investigation.  These are the very same materials and information that the government would have produced in discovery if Mr. Fisk were still alive and had been charged, as the government assured the Court it would have done had Mr. Fisk lived.

Thus, the government's failure to produce materials regarding Mr. Fisk's role as a secret government operative violates the government's discovery obligations under Rule 16 and *Brady*. The government cannot satisfy these obligations by sitting on the information and then making a last-minute disclosure of no evidentiary value.  Accordingly, the Court should compel the government to promptly provide these materials to Mr. Lambert.

III.    **The Government's Failure to Produce Mr. Mikerin's Audio or Video Recordings Violates Rule 16 and *Brady***

Recordings of illicit payments, or requests for payments, by and to Mr. Mikerin, Tenex, Tenam or any individuals associated with them consist of Rule 16 and *Brady* material.  Thus, the government's failure to produce audio or video recordings regarding these payments violates the government's disclosure obligations under Rule 16 as well as *Brady* and its progeny.

16

According to the government, Mr. Lambert allegedly conspired with Mr. Condrey, Mr. Fisk and Mr. Mikerin to make illicit payments to Mr. Mikerin so that he would use his influence to assist TLI in securing business with Tenex.  Thus, recordings of, or about, illicit payments requested by, or made to, Mr. Mikerin are central to the alleged criminal scheme and material to Mr. Lambert's defense.  Similarly, any recordings about requests for, or payments to, Tenex, Tenam or any associated individuals go to the core of the government's allegations about Mr. Mikerin's improprieties at Tenex, and are therefore material to Mr. Lambert's defense.  This is even more so when alleged payments were made by Mr. Campbell and Mr. Fisk, the government's own secret operatives, to further the illicit scheme that the government relied upon in its attempt to "flip" Mr. Mikerin.  Most significantly, communications relating to illicit payments between Mr. Mikerin and Mrs. Payne, the widow of the FBI operative and co-conspirator who supposedly recruited Mr. Lambert into the alleged scheme (and any recordings of these communications), are central to the government's allegations that Mr. Lambert conspired with Mr. Mikerin and Mr. Fisk, and are material to Mr. Lambert's defense.  These recordings would assist Mr. Lambert in identifying any other individuals who may have witnessed, or had knowledge of, payments to or from Mr. Mikerin, and in providing potentially exculpatory information regarding the legitimate reason for the payments, or about Mr. Lambert's lack of involvement and knowledge in making them.  Additionally, recordings may well be corroborative of  defense witnesses' testimony.  These recordings would also provide potential impeachment material.

In sum, as outlined above, there are numerous and various ways in which Mr. Lambert could make good use of the information included in these video and audio recordings about matters directly related to the charged conspiracy.  Names, statements and identities of the

individuals present during the allegedly illegal payments may open a myriad of doors to bolster Mr. Lambert's defense arguments and attack the government's theory.  There is simply no good reason why the government should not be compelled to turn over to Mr. Lambert all the materials it possesses relating to Mr. Mikerin and the very illegal scheme of which he pled guilty and in which Mr. Lambert is now alleged to have participated.

Recordings of allegedly illicit payments, or requests for payments, by and to Mr. Mikerin, Tenex, Tenam or any individuals associated with them are certainly material to the allegations in the indictment and material to Mr. Lambert's defense.  For example, recordings of Mr. Mikerin's conversations with Mrs. Payne about allegedly illicit payments made by her secret FBI source husband would be material and particularly favorable to Mr. Lambert because they would provide documentary evidence to corroborate potential testimony by defense witnesses. Mr. Lambert is prepared to explain to the Court in further detail, on an *ex parte* basis, how these recordings are exculpatory and material to Mr. Lambert's defense.

Thus, the government's failure to produce audio and video recordings of illicit payments, or requests for payments, by and to Mr. Mikerin, Tenex, Tenam or any associated individuals violates Rule 16 and *Brady*.  Accordingly, the Court should compel the government to promptly provide these materials to Mr. Lambert.

**IV.  The Government's Failure to Produce FBI 302s, Interview Memoranda and Interview Notes Reflecting Witness Statements Violates Rule 16 and *Brady***

The vast majority of the cursory statements that the government disclosed to Mr. Lambert were identified by the government as "Potentially *Brady*, *Giglio* or Impeachment."[3]  The

---

[3] Presumably, the government would have also identified all of the witness statements that it subsequently chose to disclose to Mr. Lambert as "potentially *Brady*, *Giglio* or impeachment" had Mr. Lambert not alerted the government that he was seeking to obtain the witness statements' underlying source materials.

government's brief summaries of what it believes original source materials say are insufficient to satisfy the government's obligations when it possesses the underlying source materials from which these summaries were presumably crafted. Thus, the government's failure to produce the underlying FBI 302s, interview memoranda and interview notes violates the government's disclosure obligations under Rule 16 as well as *Brady* and its progeny.

There is no doubt that the statements that the government cursorily summarized in its disclosures to Mr. Lambert are both favorable to Mr. Lambert and material to his defense. The government itself has characterized many of them as "Potential *Brady*, Giglio or Impeachment Material." February 2, 2018 DOJ Letter. For example, among other things, the government's brief summaries reflect excerpts of exculpatory statements of Mr. Lambert's alleged co-conspirators, including Mr. Condrey, the government's main cooperating witness, as well as statements by Mrs. Condrey, the only remaining available witness with direct knowledge of the facts who can testify about Mr. Lambert's lack of involvement in the alleged scheme.[4] They also include the government's own brief summaries of statements by other TLI employees with knowledge of the allegedly illicit payments to Mr. Mikerin, which further bolster Mr. Lambert's defense arguments. Moreover, the disclosures include government-drafted summarized statements of Mr. Campbell, the FBI's own secret operative tasked with reporting to the government about Mr. Mikerin's alleged payment scheme. These statements support Mr. Lambert's defense as well. Although it goes without saying that the government's statements will somewhat aid Mr. Lambert in both identifying potential defense witnesses and preparing them for trial, Mr. Lambert is entitled to the full source materials from which the government

---

[4] Mr. Fisk and Mr. Mikerin, the only other witnesses with direct knowledge of the facts who could provide exculpatory testimony will not be present during Mr. Lambert's trial. Mr. Fisk died in 2011 and Mr. Mikerin is believed to be somewhere in Russia.

created its statements.  Mr. Lambert may well need to use these undisclosed materials to impeach the government's main cooperating witness and any other government witness whose statements have been succinctly summarized in the government's disclosures.  Consequently, there is certainly more than a reasonable probability that these undisclosed exculpating source materials will directly affect the outcome of Mr. Lambert's trial.

As disclosed by the government, however, their carefully crafted summary statements are merely cursory, often limited to single-paragraph summaries, and at times even so succinctly described as not to provide any substantive information at all.  *See, e.g.*, February 2, 2018 DOJ Letter (summarily providing that counsel for Mr. Condrey and TLI "denied wrongdoing" on behalf of Mr. Condrey).  Clearly, Mr. Lambert cannot effectively use paraphrased information or briefly-outlined summaries of third-party statements to uncover additional admissible evidence, identify the best defense witnesses, prepare direct and cross-examinations, develop defense arguments, or confront a witness with their prior statements, when the source materials from which those statements were crafted are readily available and in the government's possession. *See United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007) (holding that the government is required to make *Brady* disclosures that are "sufficiently specific and complete" to permit effective use by the defense).  Similarly, these statements are so generally summarized that Mr. Lambert cannot realistically be expected to use a bullet-point outline of information to potentially impeach a government witness's broader and likely more expansive testimony at trial. *See Jean v. Rice*, 945 F.2d 82, 85-87 (holding that the government's failure to turn over video tapes of the government witness's hypnosis was a *Brady* violation because it prevented the defense from impeaching the witness's statements).  Moreover, without access to the source materials reflecting the full and actual statements, it is practically impossible for Mr. Lambert to

identify any discrepancies between the extremely cursory summary that the government provided to Mr. Lambert and a witness's actual statements, as well as between the witness's statements as reported and their potential testimony at trial.  *See United States v. Deli*, 151 F.3d 938, 942-44 (9th Cir. 1998) (finding that although the government had produced an interview summary, the government's refusal to turn over the interview notes violated *Brady* because discrepancies existed between the summary memorandum and the notes).  Significantly, the Department of Justice Manual too recognizes that prosecutors should turn over discoverable information "in its original form" unless the disclosure would "create security concerns or when such information is contained in attorney notes, internal agency documents, confidential source documents, Suspicious Activity Reports, etc."  U.S. Department of Justice Manual, Section 165. And even if discoverable information is not provided in its original form and is instead provided in a letter to defense counsel, the Justice Manual provides that "prosecutors should take great care to ensure that the full scope of pertinent information is provided to the defendant."  *Id*.

Thus, the government's failure to produce FBI 302s, interview memoranda and interview notes reflecting the witnesses' actual statements violates both Rule 16 and *Brady*.  Accordingly, the Court should compel the government to promptly provide these materials to Mr. Lambert.[5]

### V.	The Government's Failure to Produce Interview Notes of Mr. Lambert's Statements to the Government Violates Rule 16

---

[5] In the alternative, Mr. Lambert respectfully requests that the Court, at a minimum, conduct an *in camera* review of the FBI 302s, interview notes and any other interview memoranda to assess whether they accurately match the content of the government-created summaries, or contain discrepancies that would aid Mr. Lambert's defense.  *See, e.g.*, *Brown*, 303 F.3d at 588 (noting that the district court had previously compared, *in camera*, the agent's notes and the FBI 302 report); *United States v. Rudolph*, 224 F.R.D. 503, 514 (N.D. Ala. 2004) (holding that "if an *in camera* inspection can allay some of defendant's concerns and avoid unnecessary error at this early stage, the court is willing to undertake the task of reviewing" the investigative agents' rough notes).

Mr. Lambert's statements to the FBI agents during the government's raid of TLI's offices are unlikely to have been accurately and completely captured in the FBI 302. Thus, the government's failure to produce the FBI agents' interview notes reflecting Mr. Lambert's actual statements violates the government's disclosure obligations under Rule 16.

It is undisputed that Mr. Lambert's statements to the FBI are Rule 16 material *per se*. *See* Rules 16(a)(1)(A) and (B). Thus, Mr. Lambert is statutorily entitled to them. However, the FBI 302 supposedly reporting Mr. Lambert's statements, which was transcribed the day after the agents interrogated Mr. Lambert, contains surprisingly few statements in quotations. Instead, the report mostly consists of the FBI agent's own recharacterization of what Mr. Lambert allegedly told the government. Consequently, on its face, the FBI 302 does not accurately reflect Mr. Lambert's actual statements. *See United States v. Brown*, 303 F.3d 582, 590 (5th Cir. 2002) (holding that the government must produce interview notes if "the content of those notes have [not] been accurately captured in a type-written report, such as a 302"). Thus, because the four-page FBI 302 includes just a few quotes directly attributed to Mr. Lambert, it is highly probable that significant discrepancies and omissions exist between the FBI 302 and Mr. Lambert's actual responses as transcribed in the interview notes. *See United States v. Coe*, 220 F.3d 573, 583 (7th Cir. 2000) (alluding that only the presence of "minor" discrepancies between the interview notes and the written reports would dispense the government from its obligation to turn over the notes).

Therefore, the government's failure to produce the FBI interview notes reflecting Mr. Lambert's actual statements violates Rule 16. Accordingly, the Court should compel the government to promptly provide these materials to Mr. Lambert.[6]

---

[6] In the alternative, Mr. Lambert respectfully requests that the Court, at a minimum, conduct an *in camera* review of the FBI interview notes to assess whether they accurately match the

WHEREFOR, Mr. Lambert respectfully requests that the Court schedule an oral hearing on this motion and issue an Order compelling the government to promptly produce certain Rule 16 and *Brady* evidence, as further set forth herein.

Respectfully Submitted,

Date: April 15, 2019

/s/ William M. Sullivan, Jr.
William M. Sullivan, Jr., Esq. (No. 17082)
Thomas C. Hill, Esq. (No. 05703)
Fabio Leonardi, Esq. (No. 07206)
1200 Seventeenth Street, NW
Washington, D.C. 20036
Telephone: (202) 663-8027
Facsimile: (202) 663-8007
wsullivan@pillsburylaw.com
thomas.hill@pillsburylaw.com
fabio.leonardi@pillsburylaw.com

*Counsel for Defendant Mark Lambert*

---

content of the FBI 302 or contain discrepancies that would aid Mr. Lambert's defense.  *See*, *e.g.*, *Brown*, 303 F.3d at 588; *Rudolph*, 224 F.R.D. at 514.

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of April 2019, I caused the foregoing Motion

Requesting an Order Compelling the Government to Produce Certain Rule 16 and *Brady*

Evidence and accompanying Memorandum of Law to be filed electronically using the Court's

CM/ECF system, which automatically sent a notice of electronic filing to all counsel of record.


Respectfully Submitted,

Date: April 15, 2019

/s/ Fabio Leonardi
Fabio Leonardi, Esq.
1200 Seventeenth Street, NW
Washington, D.C. 20036
Telephone: (202) 663-8027
Facsimile: (202) 663-8007
fabio.leonardi@pillsburylaw.com