IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. TDC-18-0012 |
| | ) | |
| MARK T. LAMBERT, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT MARK LAMBERT'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION FOR A SECOND CONTINUANCE OF TRIAL**

Defendant Mark Lambert, by and through undersigned counsel, respectfully moves this Court to schedule an oral hearing on this motion and issue an Order continuing trial, currently scheduled to begin on June 18, 2019, to September 2019 or any time thereafter.

**BACKGROUND**

On March 26, 2019, Mr. Lambert sought a first continuance of trial, which was at the time scheduled to begin on April 30, 2019, for approximately two months. *See* Defendant Mark Lambert's Unopposed Motion to Continue Trial (ECF No. 55) (attached as Exhibit 1). Mr. Lambert's request, which the government did not oppose, was based on his need for additional time to review the government's voluminous discovery, which had reached over two million documents, including hundreds of thousands of additional discovery material that the government had just recently produced, as well as numerous records from an upcoming additional production.

On the following day, the Court held a telephonic status conference. At the outset, the Court questioned the government as to the delay in producing discovery to Mr. Lambert. *See* March 26, 2019 Transcript of Status Conference via Telephone Before the Honorable Judge

2

Theodore D. Chuang at 2, ¶¶ 13-25 and 3, ¶ 1-4 (attached as Exhibit 2). In response, the government noted that its productions were "pretty voluminous" because this was not "the discrete case that perhaps some of the other cases were." *Id*. at 3, ¶¶ 9-13. In addition, the government explained to the Court how a "substantial production" of about <u>two million</u> records that the government had made in 2018 "wasn't really readable so [the government] spent a fair amount of time reproducing that discovery in order to make it readable to the Defendant."[1] *Id*. at 3, ¶ 9 and 4, ¶¶ 4-8. Finally, the government represented that while "there are still some matters . . . [which] we have outstanding," the government "expect[ed] to produce [additional discovery materials] in the next couple of weeks . . . as late as April 12 . . . ." *Id*. at 4, ¶¶ 14-16 and 9, ¶ 6. The government subsequently reiterated its commitment to producing "several hundred thousand documents" to Mr. Lambert "between now and April 12." *Id*. at 13, ¶¶ 1-3.

Based upon the parties' representations, the Court indicated that it intended to grant Mr. Lambert's unopposed continuance, but warned that "everyone [must] keep going as diligently as they can now" so that "we don't have any 11th hour surprises on documents that could have been found in the timeframe we are in right now rather than down the road." *Id.* at 23, ¶¶ 21-25. On March 27, the Court continued trial to June 19. *See* March 27, 2019 Order. The Court did so based on its understanding that

> hopefully every rock has already been turned over [by the government] and it is just a matter of processing whatever you are finding because sometimes when you leave things to the eve of trial or even the weeks before trial you end up in a situation like we are now where new stuff arises and then you end up with the potential for another request for continuance, which I don't think would really be appropriate.

March 26, 2019 Transcript at 23, ¶¶ 12-19.

---

[1] As the Court certainly recalls, these "unreadable" documents were part of the so-called "DOE Production," a massive document dump replete with significant electronic discovery issues.

3

However, until very recently, the government had left approximately one million "stones" unturned. Indeed, since the Court continued trial on March 27, and despite prior representations to the Court that it expected to produce "hundred thousands" documents within a "couple of weeks," the government has actually produced about <u>one million</u> pages of documents. *Id*. at 13, ¶¶ 1-8. Moreover, despite the government's repeated commitments to the Court that it would make its production by April 12, the government produced about 405,000 pages on April 19, over 114,500 pages on April 29, about 107,000 pages on May 7, and approximately 5,200 files as recently as ten days ago – about a month before trial is now scheduled to begin. *See* March 29, 2019 Letter of U.S. Department of Justice (attached as Exhibit 3), April 19, 2019 Letter of U.S. Department of Justice (attached as Exhibit 4), April 22, 2019 Letter of U.S. Department of Justice (attached as Exhibit 5), April 29, 2019 Letter of U.S. Department of Justice (attached as Exhibit 6), May 7, 2019 Letter of U.S. Department of Justice (attached as Exhibit 7), and May 10, 2019 Letter of U.S. Department of Justice (attached as Exhibit 8).

Further, at least about 350,000 pages contained in these government productions were obtained from witnesses whom the government itself previously identified as having "Potentially *Brady*, *Giglio*, or Impeachment Material." *See* February 2, 2018 Letter of U.S. Department of Justice (attached as Exhibit 9). These potentially exculpatory and relevant materials include emails, laptops, calendar entries, hard drives and thumb drives of Daren Condrey, Mr. Lambert's former co-president at Transport Logistics International, Inc. ("TLI"), his alleged co-conspirator, and the government's main cooperating witness; Carol Condrey, Mr. Condrey's wife and TLI's former financial manager whom the government initially arrested and charged along with her husband; Mike Rosso, TLI's chief financial officer who worked with Mrs. Condrey; Lauren Haas, Mr. Lambert's and Mr. Condrey's secretary at TLI; Vadim Mikerin, the alleged bribe

recipient; and Tatiana Mikerin, Mr. Mikerin's wife.  Additionally, these productions include emails of the late Rodney Fisk, TLI's former president and Mr. Lambert's alleged co-conspirator who, along with Mr. Mikerin, allegedly initiated the unlawful payment scheme at issue in this case.  As the Court knows, less than two months ago, the government informed Mr. Lambert, for the first time, that Mr. Fisk was actually a paid covert FBI operative at the same time he is alleged to have recruited Mr. Lambert into the criminal conspiracy.[2]

Finally, although the government has made massive, albeit late, productions of discovery material, it has refused to produce certain specific Rule 16 and *Brady* evidence that Mr. Lambert requested.  Thus, on April 15, Mr. Lambert sought the Court's intervention to compel the government to produce these documents.  *See* Defendant Mark Lambert's Motion Request for an Order Compelling the Government to Produce Certain Rule 16 and *Brady* Evidence (ECF No. 61).  A hearing on Mr. Lambert's motion to compel is currently scheduled for May 21 before this Court.  *See* Paperless Notice (ECF No. 69).

## ARGUMENT

The Court should grant a continuance because the government's failure to comply with its discovery obligations will significantly impair Mr. Lambert's due process rights.  Indeed, the government chose not to review hundreds of thousands of records for potential relevancy and *Brady* or *Giglio* information before dumping the materials, including numerous duplicate documents, on Mr. Lambert.  Moreover, the government delayed the production of about one million pages of potential Rule 16, *Brady* and *Giglio* materials until very recently, thereby

---

[2] As further explained in Mr. Lambert's motion to compel, Mr. Fisk was working as a covert FBI asset while a second secret government operative and paid FBI source, William Campbell, was directly involved in making purportedly illegal payments to Mr. Mikerin at the direction of the FBI, and was reporting back to the FBI about the payment scheme.

5

preventing Mr. Lambert from making any effective use of them.  In fact, now less than a month from trial, Mr. Lambert will have no meaningful opportunity to properly review all of these records and prepare his defense, especially as Mr. Lambert is seeking to compel the government to produce certain other *Brady* and Rule 16 documents pursuant to a separate motion currently pending before this Court, which would be in addition to the one million pages of documents that the government has only recently produced.  Accordingly, the court should continue trial so that Mr. Lambert may have sufficient time to review the government's discovery materials.  Indeed, in light of the government's failure to comply with its Rule 16, *Brady* and *Giglio* disclosure obligations, a continuance of trial is the correct, and preferred, remedy.

**I.      The Government Must Review Materials in its Possession for *Brady* or *Giglio* Information Before Producing Them to Mr. Lambert**

The government has an affirmative duty to review all documents in its possession for *Brady* or *Giglio* information before producing them to the defendant.  "[I]n referencing the DOJ *Brady/Giglio* guidelines, and as well established by case law, the prosecution has the duty to *affirmatively* scour those records of the agencies considered the 'government' for purposes of the criminal case in order to determine and acquire those materials which would be considered *Brady* exculpatory and *Giglio* impeaching."  *United States v. Salyer*, No. CR. S-10-0061 LKK (G, 2010 WL 3036444, at *3 (E.D. Cal. Aug. 2, 2010) (emphasis in original).  Indeed, "the most recent Department of Justice guidelines, fashioned after some embarrassing non-disclosures in other cases, command an actual review of the materials acquired during investigation of a criminal case for the purpose of disclosing Brady/Giglio materials."  *Id*.  "Tellingly, nowhere in the memorandum does it even suggest that in lieu of affirmatively looking for *Brady/Giglio* the prosecutor may determine not to look at all and simply disclose the entire discovery file."  *Id.*

Therefore, "[t]he prosecutor's argument that his duty to affirmatively search for *Brady/Giglio* information is performed by not searching is oxymoronic in nature . . . . Again, the Supreme Court has placed the initial *Brady/Giglio* duty on the government, and the [court] is not free to assign it to [the defendant]." *Id.* at *3-5; *see also United States v. Hsia*, 24 F. Supp. 2d 14, 29 (D.D.C. 1998) (holding that "it is the government's responsibility in the first instance to determine whether information in its possession is *Brady* material"). In fact, the government is in a "far better position than the Defendant to know what evidence might be exculpatory and/or impeachment material under *Brady*" because the government "determined the nature of the charges" and has "knowledge of the evidence and witnesses it intends to produce to prove those charges." *United States v. Blankenship,* No. 14-cr-00244, 2015 WL 3687864, at *7 (S.D. W. Va. June 12, 2015).

The government's obligation to "actually review" the materials acquired during a criminal investigation before making charging decisions is also a critical component of the government's own special prosecutorial functions.

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.

*Berger v. United States*, 295 U.S. 78, 88 (1935). Indeed, the "primary duty of the prosecutor is to seek justice . . . not merely to convict." Standard 3-1.2 Functions and Duties of the Prosecutor, ABA Standards for Criminal Justice 3-1.2; *see also Nero v. Mosby*, 890 F.3d 106, 117 (4th Cir. 2018), *cert. denied*, 139 S. Ct. 490, 202 L. Ed. 2d 378 (2018) (explaining that "prosecutors have a responsibility to enforce the laws evenhandedly and to exercise independent judgment in seeking justice"). Accordingly, the government cannot simply choose to stop reviewing its case file once it supposedly determines that it has enough evidence to charge the

target of its investigation. Instead, if the government is truly – and impartially – in search for the truth, it must review *all* of the evidence that it has gathered in the course of the investigation, even if it leads the government to learn of exonerating documents or exculpatory information that will undermine the government's theory of the case. In fact, "[p]rosecutors must pursue justice, which cannot simply be measured in the number of convictions. And a prosecutor's zealousness must extend not only to advocacy, but to *the pursuit of truth*, which is coextensive with the pursuit of justice." Remarks of Deputy Attorney General Rosenstein, Right to Counsel National Consortium's Third Annual Meeting, 2017 WL 4999603 (Nov. 2, 2017) (emphasis added).

II. **The Government Must Make Timely Productions of Potential Rule 16, *Brady* and *Giglio* Materials to Mr. Lambert**

Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure requires the government to permit a defendant to inspect documents "if the item is within the government's possession, custody or control and . . . the item is material to preparing the defense." Additionally, "[t]he Due Process Clause requires the prosecution to disclose upon request evidence that is favorable to the defense and material to guilt or punishment." *United States v. Sterling*, 724 F.3d 482, 511 (4th Cir. 2013). However the government's disclosure of *Brady*, *Giglio* and Rule 16 material cannot be "too late for the defendant to make effective use of it . . . ." *United States v. Russell*, 971 F.2d 1098, 1112 (4th Cir. 1992). Thus, if "the government's contumacious conduct involves a delay in producing discovery . . . the relevant inquiry is whether the defendant's counsel was prevented by the delay from using the disclosed material effectively in preparing and presenting the defendant's case." *Sterling*, 724 F.3d at 511 (internal quotation marks omitted). And if so, "[t]he district court is permitted . . . to impose sanctions upon the government's failure to timely comply with" its discovery obligations under Fed. R. Crim. P. 16(d)(2), *Brady* and *Giglio*.

8

*Sterling*, 724 F.3d at 512. Although the court may grant a continuance or "enter any other order that is just under the circumstances[,]" Fed. R. Crim. P. 16(d)(2)(B), "[a] continuance is the preferred sanction." *Sterling*, 724 F.3d at 512; *See also United States v. Collins*, 415 F.3d 304, 311 (4th Cir. 2005) (agreeing with the district court that "a motion to get more time" may be the proper vehicle for a late *Brady* disclosure).

**III. The Government Chose Not to Review Materials in its Possession for Potential Relevancy and *Brady* or *Giglio* Information Before Producing Them to Mr. Lambert**

It is significant that the government chose not to review hundreds of thousands of documents in its possession for potential relevancy and *Brady* or *Giglio* information before producing them to Mr. Lambert. For instance, the government itself recently asserted that "the problem is . . . when we find . . . great stores of electronic media and we have to compare that to what we have already produced, it becomes difficult. So rather than try to figure out if every single page has already been produced, we have just decided to reproduce it . . . ." March 26, 2019 Transcript at 6, ¶¶ 10-15. Thus, not only is the government simply dumping these "great stores" of documents on Mr. Lambert without first reviewing them for potential relevancy and *Brady* or *Giglio* information, but it is also eviscerating his constitutional rights just because it is supposedly "difficult" for the government to review the voluminous materials that the government itself has collected since it began investigating this case over <u>nine years</u> ago. *See Salyer*, 2010 WL 3036444, at *5 (finding that the government argued at length that "if it were required to presently, actually review the documentation it acquired, in order to identify *Brady/Giglio* materials, the burden of doing so would be impossible, even to the point of having to dismiss the case[,]" and holding that "[i]f the government professes this inability to identify the required information after five years of pre-indictment investigation, its argument that the

9

defense can 'easily' identify the materials buried within the mass of documents within months of post-indictment activity is meritless").

Moreover, the government's vague and inconclusive representations about the content of its recent productions to Mr. Lambert further evidence a lack of basic knowledge that can only be imputed to the government's failure to review its discovery materials for relevancy, *Brady* or *Giglio* information before producing them to Mr. Lambert. Indeed, for example, when the Court specifically asked the government whether the recent new productions included materials that are "discoverable under Rule 16," the government noted that "we *think* that what has been going out now has largely been those things that we *think* may have something in it." March 26, 2019 Transcript at 6, ¶¶ 16-19 and 7, ¶¶ 3-5 (emphasis added). Similarly, the government recently noted that these productions consist of materials that are "*likely* irrelevant to the charges against [Mr. Lambert]." *See* April 19, 2019 DOJ Letter at 3 (emphasis added). And again, the government itself represented that the recent production containing Mr. Condrey's personal computer "had *likely* no information that relates to the work that was done at" TLI but "it is still something that *may* be more *Giglio*-related, I *suppose* . . . ." *Id*. at 7, ¶¶ 9-16 (emphasis added).

Finally, as the Court certainly recalls, this is not the first time that the government appears to be producing massive amounts of discovery materials without first reviewing them for potential relevancy and *Brady* or *Giglio* information, under the pretense of responding to a purported request for "open file discovery." Indeed, when the parties appeared before the Court in 2018 to address the widespread electronic discovery issues that plagued a vast portion of the over two million documents within the government's DOE Production, the Court stressed to the government that "I am still trying to understand and just – it doesn't sound like you really know what is in this collection of documents and I find that a little surprising . . . ." May 30, 2018

Transcript of Hearing Before the Honorable Judge Theodore Chuang at 17, ¶¶ 22-25 (attached as Exhibit 10). And in fact, as soon as the Court began pressing the government, it became apparent that the government had not actually reviewed the DOE Production before producing it to Mr. Lambert.

> [Government]: Most of these come off computers and other electronic media that were in these –
> [Court]: How do you know they are even relevant to the case?
> [Government]: Well we –
> [Court]: If you don't know what is in them.
> [Government]: The answer is we don't. We can't tell you all of the –
> [Court]: So why are you producing documents if you don't know if they have anything to do with your case?
> [Government]: Well they –
> [Court]: I mean, that is just creating a lot of work for everybody.
> [Government]: I understand, but we are trying to cooperate with their requests for the certain discovery. So we are giving them what they have asked for . . . .

*Id.* at 18, ¶¶ 14-25 and 19, ¶¶ 1-4.

In sum, it seems clear that the government chose not to review hundreds of thousands of materials in its possession for potential relevancy and *Brady* and *Giglio* information before producing them to Mr. Lambert, thereby impermissibly shifting the burden of doing so to him.

**IV.    The Government's Failure to Comply with its Rule 16, *Brady* and *Giglio* Discovery Obligations Will Significantly Impair Mr. Lambert's Due Process Rights**

The government's discovery obligations to timely produce potential Rule 16, *Brady* and *Giglio* materials are particularly critical in this case, as the government chose not to review hundreds of thousands of documents for potential relevancy and *Brady* or *Giglio* information before dumping them on Mr. Lambert. Thus, at the very least, the government should have promptly produced these materials to Mr. Lambert so that he could effectively review them and properly prepare for trial. However, it did not. Accordingly, the government's delayed

discovery productions of potential Rule 16, *Brady* and *Giglio* materials, which the government itself failed to review, will significantly impair Mr. Lambert's due process rights.[3]

As the Court correctly recently noted, the government has been producing discovery material to Mr. Lambert because it "thinks it is relevant enough, or at least potentially relevant enough" and that is why "they are going to produce it . . . ." March 26, 2019 Transcript at 9, ¶ 25 and 10, ¶¶ 1-2. Indeed, the government itself represented that it recently produced the hard drive of Mr. Condrey's personal computer because it "may be more *Giglio*-related . . . ." Similarly, the government itself recently asserted that it made certain productions because they "may have something in it" that is discoverable under Rule 16. And in fact, as previously explained, these materials may very well have Rule 16, *Brady* or *Giglio* information because at least about 350,000 pages were directly obtained from computers, emails, hard drives, thumb drives, and calendars of Mr. Condrey, Mrs. Condrey, Mr. Fisk, Mr. Mikerin, Mrs. Mikerin and Mr. Rosso – key witnesses whom the government itself previously identified as having "Potentially *Brady*, *Giglio*, or Impeachment Material."

However, the government has made these recent productions too late for Mr. Lambert to make effective use of them in preparing for trial. Indeed, while the government represented to the Court, on multiple occasions, that it would produce certain "hundred thousand documents" to Mr. Lambert within a "couple of weeks" and "as late as April 12," it then proceeded to disclose –

---

[3] The government's failure to actually review all of the evidence in its possession before charging Mr. Lambert not only casts additional doubts on the credibility of the government's investigation but also raises significant concerns about the integrity of the government's decision to indict Mr. Lambert. Was the government merely seeking to convict or find the truth? *See Smith v. Groose*, 205 F.3d 1045, 1049 (8th Cir. 2000) (noting "the fundamental duty of prosecutors to vindicate the truth and to administer justice") (internal quotation marks omitted).

well after April 12 and as recently as 10 days ago – a total of about one million pages of potential Rule 16, *Brady* and *Giglio* documents which, for the most part, the government had in its possession since at least 2014. This is precisely what the Court intended to avoid when it warned against "any 11th hour surprises on documents that could have been found in the timeframe we are in right now," and specifically directed the government to ensure that "every rock has already been turned over" because "when you leave things to the eve of trial or even the weeks before trial you end up in a situation like we are now where new stuff arises and then you end up with the potential for another request for continuance . . . ."

Mr. Lambert estimates that it will take approximately 10,000 hours to review the government's recent discovery productions, totaling about 267 weeks of review time.[4] Furthermore, as Mr. Lambert is seeking to compel the government to produce certain other *Brady* and Rule 16 documents pursuant to a separate motion currently pending before the Court, Mr. Lambert would need time to review these new records, which would be in addition to the one million pages of documents that the government has only recently produced. Thus, with trial scheduled to begin less than a month from now, it is manifest that Mr. Lambert will have no meaningfully opportunity to effectively review these documents to properly prepare his defense and present his case.

Accordingly, the Court should continue trial to allow Mr. Lambert sufficient time to review the government's late productions of discovery materials. Indeed, in light of the government's failure to comply with its Rule 16, *Brady* and *Giglio* disclosure obligations, a continuance of trial is both the correct, and preferred, remedy in this case. Additionally, a

---

[4] Based on the fact that the government's productions have generally averaged 1.5 pages per document and that the industry-standard rate of review is 60 documents per hour.

13

continuance will certainly not prejudice the government.  Indeed, as the Court knows, this case stems from an investigation dating back, at least, to 2009.  Further, over a year and half has passed since the government's decision to charge Mr. Lambert, which was made almost two years after Mr. Lambert's counsel had delivered a comprehensive declination presentation to the government.  Actually, the government can only benefit from a continuance, as it will allow it to review all of the evidence that the government chose to disregard before charging Mr. Lambert.

Finally, Mr. Lambert acknowledges that when the Court first continued trial, it noted, understandably, that "[n]o further continuances will be granted absent exceptional circumstances."  March 27, 2019 Order.  The government's infringement of Mr. Lambert's due process rights – by choosing not to review materials in its possession for potential relevancy and *Brady* or *Giglio* information prior to producing them to Mr. Lambert, and by delaying the production of about one million pages, including hundreds of thousands of pages obtained from "Potentially *Brady*, *Giglio* or Impeachment" witnesses – constitutes "exceptional circumstances" warranting a second continuance of trial.

## CONCLUSION

For the reasons set forth above, Mr. Lambert respectfully requests that the Court schedule an oral hearing on this motion and issue an Order continuing trial, currently scheduled to begin on June 18, 2019, to September 2019 or any time thereafter.

Dated: May 20, 2019

Respectfully submitted,

/s/ William M. Sullivan, Jr.
William M. Sullivan, Jr. (No. 17082)
Thomas C. Hill (No. 05703)
Fabio Leonardi (No. 07206)
1200 Seventeenth Street, NW
Washington, D.C. 20036
Telephone: (202) 663-8027
Facsimile: (202) 663-8007

wsullivan@pillsburylaw.com
thomas.hill@pillsburylaw.com
fabio.leonardi@pillsburylaw.com

*Counsel for Defendant Mark Lambert*